FILED
CLERK, U.S. DISTRICT COURT
August 26, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY mp DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**DANIEL CARLOS GARCIA**
1920 Boston Way
Modesto, CA 95355
Tel: (442) 324-3740
DanielCGarciaLegal@outlook.com

*Plaintiff pro se*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**(EASTERN DIVISION - RIVERSIDE)**

**DANIEL CARLOS GARCIA**,

Plaintiff,

vs.

**COUNTY OF RIVERSIDE**; **KEVIN JEFFRIES**, IN HIS INDIVIDUAL CAPACITY AS FORMER MEMBER OF THE RIVERSIDE COUNTY BOARD OF SUPERVISORS, DISTRICT 1; **KAREN SPIEGEL**, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF SUPERVISORS, DISTRICT 2; **CHUCK WASHINGTON**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF SUPERVISORS, DISTRICT 3; **V. MANUEL PEREZ**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF SUPERVISORS, DISTRICT 4; **YXSTIAN GUTIERREZ**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS MEMBER OF THE BOARD OF SUPERVISORS, DISTRICT 5; **RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**; **CHAD BIANCO**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS SHERIFF OF RIVERSIDE COUNTY; **DON SHARP**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS UNDERSHERIFF OF RIVERSIDE COUNTY;

(ADDITIONAL DEFENDANTS CONTINUED ON NEXT PAGE)

Case No.: 5:25-CV-02270-SVW-AYP

**FIRST AMENDED CIVIL RIGHTS COMPLAINT FOR DAMAGES**

(42 U.S.C. § 1983; Supplemental State Law Claims)

**DEMAND FOR JURY TRIAL**

Filed pursuant to the Court’s Order of July 31, 2026 (Dkt. No. 17)

**HERMAN LOPEZ**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS ASSISTANT SHERIFF OVERSEEING THE CORRECTIONS DIVISION; **MARTIN TOCHTROP (RETIRED)**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS FORMER CORRECTIONAL CAPTAIN AND COMMANDER OF THE JOHN BENOIT DETENTION CENTER; **SAUL COPADO**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS A SENIOR INSTITUTIONAL NURSE EMPLOYED BY RIVERSIDE UNIVERSITY HEALTH SYSTEM — CORRECTIONAL HEALTH SERVICES; **JEFFREY LOH, D.D.S.**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS CHIEF OF DENTISTRY, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; **JOHN DOE #1**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS STAFF DENTIST, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; **RIVERSIDE COUNTY HEALTH DEPARTMENT**; **RIVERSIDE UNIVERSITY HEALTH SYSTEM**; **THOMAS MINAHAN, D.O.**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS MEDICAL DIRECTOR OF CORRECTIONAL HEALTH SERVICES FOR RIVERSIDE COUNTY; **MINH C. TRAN**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS COUNTY COUNSEL FOR RIVERSIDE COUNTY; **EMILY HEADLEE**, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS DEPUTY COUNTY COUNSEL FOR RIVERSIDE COUNTY; **JUSTIN J. JANZEN**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS DEPUTY COUNTY COUNSEL FOR RIVERSIDE COUNTY; AND **JOHN DOES 2-10**,

Defendants.

TO THE HONORABLE COURT:

## I. NATURE OF THE ACTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, together with supplemental claims under California law.

2. Plaintiff alleges that the Riverside County Defendants were deliberately indifferent to his serious dental needs; that they conditioned medically necessary restorative dental care on the payment of approximately $10,000 in transportation and security charges that Plaintiff could not pay and that the County was not permitted to demand; that they withheld his own dental records and radiographs; and that they retaliated against him for seeking administrative and judicial relief by transferring him out of the County one day after a state court ordered them to respond to his habeas corpus petition. As a direct result, teeth numbers 18 and 30, which Defendants' own dentists found suitable for restoration, deteriorated beyond saving and were extracted.

3. Plaintiff seeks monetary damages only, on his own behalf, in his individual capacity.

4. This First Amended Complaint is filed pursuant to the Court's Order of July 31, 2026 (Dkt. No. 17) and implements each directive set forth in that Order. Plaintiff asserts no class allegations; asserts no claim under the Health Insurance Portability and Accountability Act; names no State of California or California Department of Corrections and Rehabilitation defendant; names no fictitiously named defendant beyond Does 1 through 10; and seeks no declaratory or injunctive relief.

5. The operative period for every cause of action pleaded in this Complaint begins on January 7, 2020, the date Plaintiff was returned to the custody of the Riverside County Sheriff's Department ("RCSD"), and the conduct on which each federal claim is predicated occurred in 2024 and 2025. Allegations concerning Plaintiff's earlier custody in Riverside County facilities from March 13, 2009, through October 12, 2012, are pleaded solely as factual background. Plaintiff asserts no cause of action arising from that earlier period, seeks no damages for it, and acknowledges that any claim arising from it is time-barred. That background is relevant only to notice, to the existence and continuity of the County's policies and customs, and to the origin of the dental restorations at issue.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Riverside County, within the Central District of California.

## III. PARTIES

### *A. Plaintiff*

8. Plaintiff DANIEL CARLOS GARCIA was a pretrial detainee and subsequently a convicted prisoner in the custody of the Riverside County Sheriff's Department from January 7, 2020, until May 8, 2025. Plaintiff brings this action on his own behalf and in his individual capacity only.

9. Plaintiff is presently confined in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at California State Prison, Corcoran, 4001 King Avenue, Corcoran, California 93212. Plaintiff's permanent residence and preferred mailing address is 1920 Boston Way, Modesto, California 95355. Mail addressed to Plaintiff is received at that residence and is then transmitted to him at his place of confinement by two independent means: (a) each item is photographed and sent to him electronically through the Securus application used by CDCR, which he is able to access from within the institution, and (b) a printed copy of each item is forwarded to him at his place of confinement by United States Postal Service First Class Mail. This arrangement ensures that Plaintiff receives filings, orders, and correspondence promptly and without interruption. Because Plaintiff is subject to transfer between institutions at any time and without notice, Plaintiff respectfully requests that all filings, orders, and correspondence be directed to the Modesto address, which will remain current regardless of any change in his place of confinement. Plaintiff will notify the Court of any change to either address.

***B. The Riverside County Defendants***

10. Defendant COUNTY OF RIVERSIDE (the "County") is a California public entity that establishes and maintains the official policies, customs, and practices governing the provision of medical and dental care to persons detained in its jail facilities. The County is sued for its unconstitutional policies and customs and for its failure to train and supervise.

11. Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT ("RCSD") is the County agency responsible for operating the County's correctional facilities and for providing medical and dental care to the persons detained in them.

12. Defendants KEVIN JEFFRIES, KAREN SPIEGEL, CHUCK WASHINGTON, V. MANUEL PEREZ, and YXSTIAN GUTIERREZ are current or former members of the Riverside County Board of Supervisors. Defendant JEFFRIES served as the Member for the First Supervisorial District from before the beginning of the operative period until January 7, 2025, and is sued in his individual capacity only as a former member. Defendant SPIEGEL has served as the Member for the Second Supervisorial District since January 2019. Defendant WASHINGTON has served as the Member for the Third Supervisorial District since March 2015. Defendant PEREZ has served as the Member for the Fourth Supervisorial District since March 2017. Defendant GUTIERREZ has served as the Member for the Fifth Supervisorial District since January 2023. Each is sued only for conduct occurring during his or her own tenure.

13. The Board of Supervisors exercises ultimate administrative authority over the Riverside County Sheriff's Department, the Riverside County Health Department, and the Riverside University Health System, including the authority to direct, review, and require revision of the written policies and procedures governing inmate medical and dental care, and the authority to compel County departments to bring those policies into compliance with state law and with the County's obligations under federal court order. The individual Board member Defendants are sued not for any vote, appropriation, or other legislative act, but for their **failure to exercise that administrative oversight authority** after receiving actual notice of the

deficiencies alleged herein. That notice came through, among other sources, the periodic monitoring reports and compliance filings submitted to the Board in connection with the federal Consent Decree in *Gray v. County of Riverside*, No. 5:13-cv-00444-VAP-OP (C.D. Cal.), and the findings and recommendations of the Riverside County Civil Grand Jury concerning health care in the County jails. Having received that notice, each Defendant failed to direct the Sheriff's Department or the County's health agencies to adopt or revise written policies governing restorative dental care and the transportation of detainees to outside dental providers, as required by California Code of Regulations, title 15, §§ 1206, 1208, and 1215.

14. Defendant CHAD BIANCO is the elected Sheriff of Riverside County and is the final policymaker with respect to jail operations, including policies and practices governing inmate medical and dental care and the transportation of detainees to outside providers.

15. Defendant DON SHARP is the Undersheriff of Riverside County and exercises supervisory authority over all custody operations, including the implementation and enforcement of medical and dental care policies.

16. Defendant HERMAN LOPEZ is the Assistant Sheriff overseeing the Corrections Division and exercises direct supervisory authority over the County's correctional facilities, custody personnel, and jail health care operations.

17. Defendant MARTIN TOCHTROP (Retired) was the Correctional Captain and Commander of the John Benoit Detention Center ("JBDC") during the operative period. Approval of a detainee's transport to an outside dental provider rested within his sole discretion. Plaintiff submitted such a request, and Defendant TOCHTROP never approved it.

18. Defendant THOMAS MINAHAN, D.O., is the Medical Director of Correctional Health Services for Riverside County and holds ultimate clinical and supervisory authority over all medical and dental care provided to persons in County custody, including authority to approve or deny requests for outside treatment. Defendant MINAHAN had actual knowledge of Plaintiff's dental condition and of the treatment his own subordinates had found medically necessary. Defendant MINAHAN testified in Plaintiff's related state medical habeas

corpus proceeding, Riverside County Superior Court Case No. CVPS-2204495, and testified in that proceeding that he had reviewed Plaintiff's medical records in their entirety. Those records documented the findings of Defendants LOH and JOHN DOE #1 that crown placement, and possibly root canal therapy, were medically necessary for teeth numbers 18 and 30. Defendant MINAHAN therefore knew of Plaintiff's serious dental need and of the County's refusal to provide the treatment, and took no action to provide it.

19. Defendant JEFFREY LOH, D.D.S., is the Chief of Dentistry for RCSD. He is responsible for establishing and implementing the dental care policies, protocols, and treatment guidelines applied in the County jails, and for training and supervising RCSD dental staff. He examined Plaintiff, determined that teeth numbers 18 and 30 were suitable for restoration, and denied Plaintiff that restoration within RCSD facilities.

20. Defendant JOHN DOE #1 is an RCSD staff dentist who examined and treated Plaintiff in 2024, found that crown placement was medically necessary for teeth numbers 18 and 30, and informed Plaintiff that RCSD would not provide it.

21. Defendant SAUL COPADO is, and at all relevant times since 2020 has been, a Senior Institutional Nurse employed by Riverside University Health System — Correctional Health Services ("RUHS-CHS") and assigned to Riverside County correctional facilities, including the John Benoit Detention Center where Plaintiff was housed. Defendant COPADO is a registered nurse licensed by the State of California and practices in accordance with the Nurse Practice Act, Business and Professions Code § 2700 et seq. Plaintiff is informed and believes and thereon alleges that Defendant COPADO is identified in the records of the California Board of Registered Nursing as "Saul Copado II," holding Registered Nurse License No. 792462, issued February 22, 2011, which has remained current at all times relevant to this action.

22. The Senior Institutional Nurse is the advanced journey level classification in the Institutional Nurse series. Under general direction, incumbents assign, supervise, and provide professional nursing care to persons detained in County correctional facilities; have charge of nursing services at those facilities; provide technical supervision to nursing staff working across

shifts; supervise and evaluate the work of professional nurses; provide training and leadership to nursing staff; and supervise the preparation and maintenance of complete medical records and reports. Upon information and belief, Defendant COPADO is **not** the Medical Administrator or Correctional Healthcare Administrator for the facility, and Plaintiff does not allege that he established County policy.

23. Defendant COPADO was the health care staff member who handled Plaintiff's request for outside dental treatment. He communicated to Plaintiff the demand for approximately $10,000 per trip as the price of transport to an outside dental provider, and advised Plaintiff that approval rested solely with Defendant TOCHTROP. Defendant COPADO knew of Plaintiff's dental condition, knew that two of the County's own dentists had found restorative treatment medically necessary, and knew that Plaintiff was indigent and could not pay the sum demanded. He neither referred Plaintiff to an appropriate provider, nor summoned care for him, nor directed any nurse under his charge to do so.

24. Defendant RIVERSIDE COUNTY HEALTH DEPARTMENT is the County agency responsible for public health services and for oversight of medical care standards in County facilities.

25. Defendant RIVERSIDE UNIVERSITY HEALTH SYSTEM (“RUHS”) is the County public health system that provides and administers health care services within County correctional facilities, and is a custodian of the health records generated in the course of that care.

26. Defendant MINH C. TRAN is the County Counsel for Riverside County and supervises the Deputy County Counsel Defendants named below. He is sued for his supervisory role in, and his failure to prevent, the administrative conduct alleged herein, including the withholding of Plaintiff's health records by County custodians and the timing of Plaintiff's transfer out of the County.

27. Defendant EMILY HEADLEE is a Deputy County Counsel for Riverside County. She objected to the release of Plaintiff's own dental records to him and participated in

the conduct alleged herein.

28. Defendant JUSTIN J. JANZEN is a Deputy County Counsel for Riverside County who participated in the conduct alleged herein.

29. At all relevant times, each individual Defendant acted under color of state law and within the course and scope of his or her employment by the County.

***C. Doe Defendants***

30. Defendants DOES 2 through 10 are individuals whose true names are unknown to Plaintiff but who participated in the violations alleged herein while Plaintiff was detained in Riverside County facilities, including additional dental staff, nursing staff, the medical or correctional health care administrator with authority over the John Benoit Detention Center, health services administrators, and custodians of medical and dental records employed by or contracted with the County. Together with Defendant JOHN DOE #1, the fictitiously named defendants in this action number no more than ten in total, in compliance with Local Rule 19-1. No Doe Defendant is an employee of the State of California or of the CDCR. Plaintiff will seek leave to amend to substitute true names once they are ascertained through discovery.

## IV. PROCEDURAL COMPLIANCE

***A. Exhaustion of Administrative Remedies***

31. Plaintiff exhausted the administrative remedies available to him within the Riverside County jail system by filing and pursuing grievances concerning his dental care through all available levels of review.

32. To the extent any administrative remedy was not exhausted, exhaustion is excused because that remedy was not "available" within the meaning of 42 U.S.C. § 1997e(a). Defendants' own conduct rendered the grievance process effectively unavailable by failing to respond to or properly process Plaintiff's dental grievances, by withholding the dental records necessary to substantiate them, and by retaliating against Plaintiff for filing grievances and seeking judicial review. *Ross v. Blake*, 578 U.S. 632, 643-44 (2016); *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc); *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

33. Plaintiff has suffered physical injury, including chronic pain, infection, and the permanent loss of two natural teeth, and 42 U.S.C. § 1997e(e) therefore poses no bar to his recovery of compensatory damages.

***B. Compliance with the Government Claims Act***

34. On March 24, 2025, Plaintiff presented a written claim to the Riverside County Board of Supervisors under Government Code § 910 et seq., setting out the facts of the denial of adequate dental care and the resulting damages. The County summarily rejected the claim without stated reason on April 21, 2025. This action was filed on August 8, 2025, within six months of the rejection as required by Government Code § 945.6. True and correct copies of the claim and the rejection are attached as Exhibits B and C.

35. Plaintiff was unable to identify the full nature and extent of his injuries until he obtained an independent dental evaluation following his transfer out of County custody, because the County withheld his dental records and radiographs. To the extent Defendants contend that any claim was untimely presented, presentation was excused and Defendants are estopped from asserting non-compliance, because their own conduct in withholding Plaintiff's records, including records he had subpoenaed, prevented and hindered timely presentation. A public entity whose own conduct has deterred or misled a claimant is estopped from relying on the claim presentation requirements. *John R. v. Oakland Unified School District*, 48 Cal.3d 438, 445 (1989); *Ard v. County of Contra Costa*, 93 Cal.App.4th 339, 346-47 (2001).

36. On March 21, 2025, Plaintiff also sent a written settlement proposal to the Board of Supervisors and to the Office of County Counsel. He received no response.

***C. Statutes of Limitation***

37. Claims under 42 U.S.C. § 1983 borrow California's two-year personal injury statute, Code of Civil Procedure § 335.1. The conduct on which each federal claim in this Complaint is predicated occurred in 2024 and 2025 and is therefore timely. Plaintiff pleads no federal claim arising from conduct occurring before 2024.

38. Plaintiff has been continuously incarcerated at all relevant times, and the

limitations period applicable to each claim was tolled under Code of Civil Procedure § 352.1.

39. Each limitations period was further tolled while Plaintiff pursued administrative remedies and while Defendants withheld the dental records and radiographs that Plaintiff required in order to discover and substantiate the nature and extent of his injuries.

## V. FACTUAL ALLEGATIONS

### *A. Background: Prior Custody and the Origin of the Restorations (2009-2019)*

40. The allegations in this subsection concern Plaintiff's prior custody in Riverside County facilities from March 13, 2009, through October 12, 2012, and his subsequent CDCR custody. They are pleaded as factual background only. No cause of action arises from that period and Plaintiff seeks no damages for it.

41. Plaintiff was arrested on March 9, 2009, in connection with a criminal case filed in the Riverside County Superior Court, Case No. INF064492, and was held in RCSD custody from March 13, 2009, through October 12, 2012. At the time of his arrest he had no dental or oral disease.

42. During that period, the County's policy was to provide no restorative dental procedures of any kind. Extraction was the only treatment offered, regardless of whether a tooth could have been saved by routine restorative care. The County also failed to make adequate oral hygiene supplies available.

43. On October 12, 2012, Plaintiff was transferred to CDCR custody. An initial CDCR dental examination revealed that Plaintiff, then thirty years old, had developed numerous carious lesions and periodontal disease during his County custody, together with two impacted wisdom teeth that the County had left untreated and that required emergency oral surgery and antibiotic treatment.

44. **The restorations at issue in this case were placed by CDCR in 2012, immediately following that transfer, and were placed only because the County had refused to provide restorative care during Plaintiff's prior custody.** CDCR dentists restored the affected teeth, including teeth numbers 18 and 30, using routine amalgam restorations, and

Plaintiff's oral health was fully restored.

45. Plaintiff remained in CDCR custody from October 12, 2012, until January 7, 2020, receiving regular dental care and maintaining good oral health. In 2019, before his transfer back to County custody, a CDCR dentist performed a comprehensive examination and radiographs and found teeth numbers 18 and 30 to be sound, with no fracture and no caries, and in no need of further restoration at that time.

***B. Return to County Custody and the Failure of the 2012 Restorations***

46. On January 7, 2020, Plaintiff was transferred back into RCSD custody in order to attend court hearings in his pending habeas corpus proceedings. He remained in County custody until May 8, 2025.

47. Plaintiff was examined by RCSD dental staff in 2021, who confirmed that teeth numbers 18 and 30 were then free of caries and without complaint.

48. **The service life of a routine amalgam restoration is approximately ten years.** The restorations placed in teeth numbers 18 and 30 in 2012 reached the end of their normal service life while Plaintiff was in the custody of the County, and failed in the ordinary course. The failure of the restorations was foreseeable, was not the result of any neglect by Plaintiff, and was not itself the injury of which Plaintiff complains.

49. **The injury of which Plaintiff complains is the County's failure, once those restorations had failed, to replace them or to crown the affected teeth.** A failed restoration is a routine and readily treatable condition. It becomes a serious one only if it is left untreated. Prompt replacement or crown placement would have preserved both teeth. The County's refusal to provide either, over a period of many months and continuing until Plaintiff was removed from its custody, is what permitted both teeth to deteriorate to the point that extraction became unavoidable.

***C. The County's Restorative Dental Care Policy***

50. Since Plaintiff's prior custody, the County has modified its dental policy to include some restorative care, such as fillings. It has not extended that policy to the full range of

restorative services required by California law and professional standards.

51. As a matter of official policy, RCSD does not provide crowns or root canal therapy within its facilities. It does not do so even when its own dentists determine that the procedure is medically necessary and that the patient is a suitable candidate.

52. The practical effect of that policy is that a detainee whose tooth could be preserved by a crown or root canal is offered only one treatment within the facility: extraction.

53. The sole alternative the County offers is treatment by a private dentist outside the facility, at the detainee's own expense, conditioned upon payment to RCSD of transportation and security charges of approximately $10,000 per trip.

***D. Discovery of the Failed Restorations, the Probing, and the Findings of Medical Necessity***

54. In 2024, Defendant JOHN DOE #1, an RCSD staff dentist, examined Plaintiff and discovered that the restorations in teeth numbers 18 and 30 had cracked and failed and would need to be replaced.

55. In the course of that examination, JOHN DOE #1 used a metal dental probe to pick at and dig into the cracked restorations in teeth numbers 18 and 30. That probing further weakened both restorations. Plaintiff consented to a visual and diagnostic examination. He did not consent to any procedure that would damage or dislodge the existing restorations, he was not warned that probing the cracked restorations carried that risk, and he was given no opportunity to decline.

56. JOHN DOE #1 determined that the failed restorations could not simply be replaced and that **crown placement on teeth numbers 18 and 30 was medically necessary**. He informed Plaintiff that RCSD did not provide crowns within its facilities, and advised Plaintiff to seek care from a private dentist outside the facility in order to avoid needless extraction of teeth that could be preserved.

57. Plaintiff submitted a formal request to be seen by an outside dentist.

58. Plaintiff was then examined by Defendant JEFFREY LOH, D.D.S., the Chief of Dentistry for RCSD, who performed radiographs and an oral examination and **independently**

**determined that both teeth numbers 18 and 30 were suitable for restoration with crowns, and that one might additionally require root canal therapy**.

59. In the course of that examination, DR. LOH likewise used a metal dental probe to pick at and dig into the already-cracked restorations in teeth numbers 18 and 30, further weakening both. As with JOHN DOE #1, Plaintiff consented only to a visual and diagnostic examination, did not consent to the probing, and was neither warned of the risk nor given the opportunity to decline.

60. As a direct result of the repeated probing by JOHN DOE #1 and DR. LOH, both restorations subsequently fell out entirely, exposing the dentin within each tooth. Plaintiff was left in constant and severe pain, both teeth were left open to bacterial invasion, and the urgency of the crown and root canal procedures that Defendants had already found necessary and already refused to provide was sharply increased.

61. DR. LOH advised Plaintiff that extraction should be avoided if the teeth could be saved, because extraction risks shifting of the adjacent dentition and degradation of the jaw bone. He further advised Plaintiff to attempt to locate a “traveling dentist” willing to come to the jail, rather than be transported to an outside facility, because RCSD charges detainees thousands of dollars for transport.

62. Notwithstanding the findings of medical necessity by two of its own dentists, the County provided Plaintiff no restorative treatment of any kind at any time between the 2024 examinations and his transfer out of County custody on May 8, 2025.

***E. The Demand for Approximately $10,000 in Transport and Security Charges***

63. Defendant SAUL COPADO, the Senior Institutional Nurse who handled Plaintiff's request at JBDC, where Plaintiff was then housed, advised Plaintiff that transport to an outside dental facility would cost approximately $10,000 per trip, and that approval rested in the sole discretion of the facility commander, Defendant TOCHTROP.

64. Plaintiff submitted the request for outside dental care. Defendant TOCHTROP never approved it.

65. **Plaintiff proposed, and his family was prepared to fund, the following arrangement: Plaintiff's family would pay an outside private dentist, in advance and in full, for the crown and root canal procedures; the County would provide only the transportation and security escort.** The County refused unless Plaintiff first paid approximately $10,000 for the escort itself.

66. **California Penal Code § 4011.2 flatly prohibits that demand.** As amended by Assembly Bill 45 (Stats. 2019, ch. 634) and effective January 1, 2020 — six days before Plaintiff was returned to County custody, and throughout the entire operative period — § 4011.2 provides in its entirety: "A sheriff, chief or director of corrections, or chief of police **shall not charge a fee** for an inmate-initiated medical visit of an inmate confined in a county or city jail." Before that amendment the maximum permissible charge was three dollars; the Legislature eliminated even that. Plaintiff's request for outside dental treatment was an inmate-initiated medical visit, and the approximately $10,000 in transportation and security charges was a fee charged for it. Designating the charge as "security and transport" rather than as a visit fee does not change its function: it was the sole condition on which the visit would occur, and a construction permitting a county to reimpose by relabeling what § 4011.2 forbids would nullify the statute.

67. California Penal Code § 4011.3 likewise prohibits a sheriff from charging an inmate any fee for durable medical equipment or medical supplies that are medically necessary. Together, §§ 4011.2 and 4011.3 establish that where the Legislature has considered whether a county may shift the cost of jail health care onto the incarcerated person, it has answered that it may not.

68. California Penal Code § 4011.1 confirms the point from the other direction. It authorizes a county to claim and recover the costs of "necessary hospital, medical, surgical, **dental**, or optometric care" rendered to a jail inmate from Medi-Cal or from any private program or policy covering that care, and provides that the county "shall be liable only for the costs of that care as cannot be recovered pursuant to this section." The Legislature's cost-recovery

scheme for jail dental care runs against third-party payors, not against the detainee.

69. California Penal Code § 4011 allocates the cost of custodial escort to the same effect. Section 4011(a) provides that where a prisoner requires treatment that "cannot be furnished or supplied at such city or county jail," it is "the duty of the sheriff or other official in charge of county correctional facilities to maintain the necessary guards, who may be private security guards, for the safekeeping of such prisoner, **the expense of which shall be a charge against the county**." The cost of the security escort is, by statute, the County's cost to bear. The statute further provides that "[a]ny prisoner may decline such care or treatment and provide other care and treatment for himself at his own expense", which is precisely what Plaintiff and his family offered to do as to the dental procedures themselves.

70. Although Penal Code § 4011(b) permits a county to seek recovery of the cost of **medical services** from the person served, that authority is expressly made "subject to subdivisions (c) and (d)," and subdivision (c) provides that where the prisoner is "poor and indigent," the cost of care at a facility other than the county hospital "shall be paid out of the general fund of such county." Plaintiff was and is indigent. Under § 4011 the County was obliged to bear both the escort expense and, Plaintiff being indigent, the cost of the medically necessary care itself.

71. California Code of Regulations, title 15, § 1206(c) independently required the County to maintain written policies and procedures governing "emergency and non-emergency medical and dental services, **including transportation**." The County maintained no policy under which a detainee could obtain transport to a medically necessary dental procedure without paying for it.

72. The approximately $10,000 charge bears no relationship to the County's actual cost. It is an arbitrary figure that functions as an absolute barrier to care for any indigent detainee, and it was imposed to deter detainees from seeking the restorative care the County had elected not to provide.

***F. Denial of Access to Plaintiff's Own Dental Records***

73. Plaintiff and his family could not arrange treatment with an outside dentist without Plaintiff's dental records and radiographs. No outside provider would undertake crown or root canal therapy without first reviewing them.

74. Plaintiff made direct written administrative requests to the County, as the custodian of his health records, for copies of his own dental records and radiographs. The County refused.

75. Plaintiff also caused a subpoena to be served on RCSD for those records in connection with his state habeas corpus proceedings. Defendant EMILY HEADLEE objected to their release, and the records were not produced.

76. California Health and Safety Code § 123110(a) entitles a patient, on presenting a request to the health care provider, to inspect his patient records during business hours **within five working days** after receipt of the request, and subdivision (b) entitles the patient to copies within fifteen days of a written request. Section 123120 provides that a patient aggrieved by a violation of § 123110 may bring an action against the health care provider to enforce the obligations prescribed by § 123110, and that the judgment may, in the court's discretion, include an award of costs and reasonable attorney fees to the prevailing party.

77. The prompt production of dental records upon authorized request is also a professional obligation of every California dentist. California Business and Professions Code § 1684.1 subjects a licensee who fails or refuses to comply with an authorized request for a patient's dental records, and a health care facility that fails or refuses to comply with a court order issued in the enforcement of a subpoena for such records, to escalating civil penalties. Plaintiff pleads § 1684.1 as evidence of the professional standard of care governing Defendants LOH, JOHN DOE #1, and the County's records custodians, and not as an independent cause of action.

78. Plaintiff further pleads the federal right of access standard at 45 C.F.R. § 164.524 as evidence of the applicable standard of care. **Plaintiff asserts no independent cause**

**of action under the Health Insurance Portability and Accountability Act.**

79. The withholding of Plaintiff's records prevented him and his family from obtaining an outside opinion and from arranging outside restorative treatment during the period in which teeth numbers 18 and 30 remained restorable.

***G. Interference with the Habeas Proceedings and the May 8, 2025 Transfer***

80. Plaintiff had a habeas corpus petition pending in the Riverside County Superior Court, Case No. CVPS-2204495, addressing the County's failure to provide constitutionally adequate medical care. That matter originated in the California Supreme Court, which issued an order to show cause on October 26, 2022, returnable to the Riverside County Superior Court. A true and correct copy of that order is attached as Exhibit A.

81. Plaintiff's counsel attempted to raise the denial of dental care within that broader medical care proceeding. Defendant HEADLEE objected. As a result, Plaintiff was required to file a separate habeas corpus petition directed solely to his dental care, Riverside County Superior Court Case No. CVRI-2501564, which fragmented his claims and further delayed treatment.

82. On May 7, 2025, the Honorable Jeffrey M. Zimel ordered RCSD, through the Office of County Counsel, to file an Informal Response to the dental habeas corpus petition in Case No. CVRI-2501564.

83. **The next day, May 8, 2025, the County transferred Plaintiff out of Riverside County and into CDCR custody at the Wasco State Prison Reception Center.** At the time of the transfer, Plaintiff had proceedings pending in four separate matters in the Riverside County Superior Court requiring his presence, including both the medical and the dental habeas corpus petitions. County Counsel was aware of those proceedings; its attorneys were present when hearings were calendared, and the minute orders were served on RCSD.

84. The decision to move a person from one custodial facility to another is an operational custody decision. It is not a filing, a pleading, or a communication to any court, and it was not made in the course of representing any party before any tribunal. Defendants

BIANCO, SHARP, and LOPEZ possessed and exercised authority over that decision. Defendants TRAN, HEADLEE, and JANZEN participated in it administratively.

85. On May 15, 2025, Defendant JANZEN appeared in the medical habeas proceeding and moved the court to deny the petition as moot on the ground that Plaintiff was no longer in County custody, a circumstance the County had itself created. The court denied the petition without an evidentiary hearing and without resolving the claims on the merits, notwithstanding the California Supreme Court's order to show cause.

86. On May 27, 2025, Defendant JANZEN made the same mootness argument in the dental habeas proceeding, Case No. CVRI-2501564. That petition was likewise denied without an evidentiary hearing and without resolution on the merits.

87. In the Informal Response filed in Case No. CVRI-2501564, County Counsel represented to the Superior Court that crown placement and root canal therapy are elective procedures and that extraction is the appropriate standard of care. That representation was contrary to the findings of the County's own Chief of Dentistry and its own staff dentist, both of whom had determined that crown placement on teeth numbers 18 and 30 was medically necessary and that both teeth were suitable for restoration.

88. **Plaintiff pleads the representations made to the Riverside County Superior Court solely as evidence of Defendants' knowledge, intent, and retaliatory motive, and as evidence of the agreement among them. Plaintiff does not plead those representations as independently actionable conduct, and seeks no relief from any Defendant on account of any statement made in or in connection with any judicial proceeding.** No cause of action in this Complaint is predicated upon conduct protected by California Civil Code § 47(b) or by any absolute immunity attaching to advocacy before a tribunal.

***H. Deterioration and Extraction of Teeth Numbers 18 and 30***

89. On July 22, 2025, following his transfer, Plaintiff was evaluated by DR. LEE, a CDCR dentist at California State Prison, Corcoran, who performed an examination and

compared new radiographs against Plaintiff's 2019 CDCR radiographs. That comparison confirmed that the deterioration of teeth numbers 18 and 30 occurred while Plaintiff was in County custody.

90. DR. LEE found that teeth numbers 18 and 30 now required both root canal therapy and crowns.

91. **By that point, however, the prolonged period without treatment had caused so much loss of tooth structure that both teeth additionally required a core build-up in order to be restored.** DR. LEE advised that CDCR did not have available the materials required to perform the core build-ups, and that CDCR was therefore unable to provide the restorative care. He advised that both teeth would have to be extracted unless Plaintiff could obtain treatment from an outside dentist within days, which remained impossible because the County had never produced Plaintiff's dental records and radiographs.

92. **The requirement of a core build-up was itself a consequence of the delay.** Had the County replaced the failed restorations or placed crowns in 2024, when its own dentists found both teeth suitable for restoration, no core build-up would have been required and both teeth would have been preserved.

93. Teeth numbers 18 and 30 were subsequently extracted. Plaintiff underwent oral surgery to remove them.

94. As a consequence of the extractions, Plaintiff now requires dental implants to replace both teeth, at a cost of approximately $10,000 per tooth, together with the cost of follow-up care and the transportation and security charges associated with obtaining that care from outside providers.

95. Any restorative or implant care that Plaintiff has since received, or may hereafter receive, is care made necessary solely by the County's failure to provide the timely restorative treatment it was obligated to provide. The extraction of teeth numbers 18 and 30, and the resulting need for implants, is evidence of the severity of the injury the County caused, and does not diminish or excuse it.

***I. Official Policy, Custom, and Practice***

96. RCSD operates five detention facilities in Riverside County, houses approximately 3,800 persons on any given day, and books approximately 60,000 persons into custody each year.

97. The refusal to provide crowns and root canal therapy is not the product of individual clinical judgment in Plaintiff's case. It is a **blanket policy** applied uniformly across all five facilities, without individualized assessment, and applied even where the County's own dentists have found the procedure medically necessary and the patient suitable.

98. The demand for transportation and security charges as the price of access to outside care is likewise a uniform practice, applied to Plaintiff and to other detainees who have sought outside dental treatment.

99. Other detainees in County custody have accepted extraction of teeth that could have been preserved by routine restorative procedures, because the County's policy makes extraction the only treatment available within its facilities. Other detainees who have sought outside dental care have been required, or threatened with the requirement, to pay the same transportation and security charges. **Plaintiff pleads these facts solely to establish the existence, uniformity, and longstanding character of the County's official policy, custom, and practice, and Defendants' notice of it. Plaintiff asserts no claim on behalf of any other person and seeks damages only for injuries to himself.**

100. The uniform application of these policies across all five facilities, over a period spanning both of Plaintiff's terms of custody, establishes that the denial of restorative dental care to Plaintiff was not an isolated or aberrational event but the predictable result of the County's official policy, longstanding custom, and settled practice, which was the moving force behind the violations of Plaintiff's rights alleged herein.

101. The County has further failed to train and supervise its dental, health administration, and custody personnel concerning the provision of medically required dental care, the transportation of detainees to outside dental providers, and the production of health

records on request. The need for such training was obvious given the frequency with which detainees require restorative dental care and given the County's own obligations under state regulation and under a standing federal court order.

***J. California Statutory and Regulatory Standards***

102. California Code of Regulations, title 15, division 1, subchapter 4, article 11 establishes the minimum standards governing health care in California local detention facilities, including the Riverside County jails. These regulations were adopted under the authority of Penal Code § 6030.

103. Title 15, § 1215 (Dental Care) provides that "[t]he facility administrator shall develop written policies and procedures to ensure emergency and medically required dental care is provided to each incarcerated person, upon request, under the direction and supervision of a dentist licensed in the state." The County maintained no policy ensuring that medically required restorative dental care was provided to Plaintiff, and its policy affirmatively excluded the very procedures its dentists found to be medically required.

104. Title 15, § 1206 requires the health authority, in cooperation with the facility administrator, to set forth written policies and procedures that include, among other things, "emergency and non-emergency medical and dental services, including transportation" and "provision for medically required dental and medical prostheses and eyeglasses."

105. Title 15, § 1208 requires a written plan for identifying and referring any incarcerated person who appears to need dental treatment at any time during incarceration, and for the assessment and treatment of such persons by or under the direction of licensed health personnel.

106. California Penal Code § 4011.2 prohibits a sheriff from charging any fee for an inmate-initiated medical visit of an inmate confined in a county jail. Penal Code §§ 4011 and 4011.5 govern the removal of a prisoner from a county jail for treatment that cannot be furnished within the jail, and allocate the expense of the necessary security escort to the county, as set out above.

107. California Government Code § 845.6 provides that a public employee, and the public entity employing him, are liable if the employee knows or has reason to know that a prisoner is in need of immediate medical care and fails to take reasonable action to summon such medical care.

108. **California's own Medicaid program classifies the two procedures at issue as covered, medically necessary dental benefits.** Senate Bill 97 (Stats. 2017, ch. 52), effective January 1, 2018 — two years before the operative period began — restored full adult dental benefits under Medi-Cal for beneficiaries aged 21 and older with full-scope coverage. As the California Department of Health Care Services has stated, the restored benefits include **laboratory processed crowns** and **posterior root canal therapy**, together with periodontal services and partial dentures. Those are precisely the procedures Defendants' own dentists found medically necessary for teeth numbers 18 and 30, and precisely the procedures Defendants refused to provide.

109. Medi-Cal is the health coverage program for low-income Californians. Plaintiff is indigent. **Plaintiff pleads the Medi-Cal benefit structure as evidence that crown placement and root canal therapy are recognized by the State of California as medically necessary restorative care rather than elective or cosmetic treatment, and not as a theory of payment or reimbursement.** That the State makes these procedures available to indigent Californians outside custody, while Riverside County categorically refused them to an indigent detainee whose own treating dentists had prescribed them, is evidence of the objective unreasonableness of the County's conduct and of Defendants' deliberate indifference.

110. For purposes of comparison only, California Code of Regulations, title 15, division 3, chapter 2, subchapter 3, article 6, § 3999.367, governs dental care within CDCR institutions rather than county jails. That regulation establishes a system of dental priority classifications under which restorative treatment, endodontic treatment, and crowns are available to state prisoners according to clinical need, subject to defined criteria and, for posterior teeth, to review and approval by CDCR's Dental Authorization Review Committee. Among the criteria

governing restorability is that the tooth not require extensive restoration including a pin or post retained core build-up. Subdivision (c) further requires CDCR to operate in accordance with the California Dental Practice Act, Business and Professions Code § 1600 et seq., and to "ensure that all patient protection provisions of the Act are in force."

111. **Plaintiff pleads § 3999.367 not for the proposition that any particular procedure is guaranteed to a state prisoner, but for two narrower purposes.** First, the regulation demonstrates that crowns and endodontic treatment are recognized within California's own correctional health system as clinically indicated restorative care rather than elective cosmetic treatment. Second, the regulation's core build-up criterion shows precisely why the County's delay was so consequential: while teeth numbers 18 and 30 remained restorable in 2024, they qualified for restoration; by the time the County released Plaintiff from its custody in 2025, the loss of tooth structure caused by the untreated interval had pushed both teeth past the threshold at which restoration remained practicable.

***K. Professional Dental Standards***

112. The general consensus within the dental profession, reflected in the positions of the American Dental Association, the California Dental Association, and the American Association of Endodontists, is that the preservation of natural dentition is strongly preferred over extraction wherever it is clinically feasible, and that crowns and root canal therapy are routine restorative procedures that are medically necessary when clinically indicated, not elective or cosmetic treatments.

113. The standard of care for a failed dental restoration requires prompt intervention in order to prevent bacterial invasion, pulpal necrosis, infection, and permanent tooth loss. Delay permits progressive and ultimately irreversible loss of tooth structure.

114. Posterior molars, including teeth numbers 18 and 30, are essential to mastication. Their loss impairs the ability to chew, permits the adjacent dentition to shift, and contributes to degradation of the alveolar bone. Untreated dental infection can produce serious systemic complications.

115. These standards were known to Defendants LOH and JOHN DOE #1, each of whom is a licensed dentist, and each of whom applied them in determining that crown placement on teeth numbers 18 and 30 was medically necessary.

***L. Prior Federal Litigation Concerning Health Care in the Riverside County Jails***

116. In *Gray v. County of Riverside*, No. 5:13-cv-00444-VAP-OP (C.D. Cal.), filed March 8, 2013, a certified class of prisoners in the Riverside County jails alleged that the County failed to provide minimally adequate medical and mental health care in violation of the Eighth and Fourteenth Amendments. On September 2, 2014, the court granted class certification and certified a Medical Subclass as to alleged practices including the failure to provide timely medical care, reliance on court orders to spur the provision of care, and the absence of adequate policies and procedures for specialty consultations and procedures. (*Gray*, Dkt. No. 131.)

117. The action was resolved by a Consent Decree entered June 7, 2016. (*Gray*, Dkt. No. 173.) In entering into it, the County admitted, for purposes of that lawsuit only, that probable cause existed to believe that violations of the federal rights of the plaintiff class had occurred sufficient to warrant the relief contained in the decree. The court ordered the County to implement a Remedial Plan comprising twenty material components, designed to meet the minimum level of health care necessary to satisfy the County's Eighth and Fourteenth Amendment obligations; **the County committed to secure the funding necessary to implement that plan**; the court appointed experts under Rule 706 of the Federal Rules of Evidence to advise it on compliance; and the court retained jurisdiction to enforce the decree.

118. Federal supervision continued throughout the operative period. On April 14, 2020, the court granted the class's emergency motion to enforce the Consent Decree. (*Gray*, Dkt. No. 191.) On June 6, 2023, the court terminated a separately adopted COVID-19 plan while directing that the parties continue to operate under the Remedial Plan and Consent Decree. (*Gray*, Dkt. No. 221.) On July 10, 2023, the court found the County in substantial compliance with thirteen material components and suspended monitoring as to those components only, ordering that all other provisions of the Remedial Plan remain in effect. (*Gray*, Dkt. Nos. 224,

225.) Seven of the twenty material components thus remained subject to active federal monitoring.

119. **Dental care was never addressed in *Gray*.** In its class certification order the court expressly declined to reach the subject, noting that the plaintiffs had not identified a specific dental policy or practice for which they sought certification and that the court therefore did not address the County's dental care policies. (*Gray*, Dkt. No. 131 at 28 n.1.) The County itself took the position in that litigation that no named plaintiff had standing to raise dental issues. (*Id.* at 46 n.13.)

120. **Plaintiff cites *Gray* not for any adjudication of the merits, but for the fact and content of the certified claims, for the County's own admissions, for the remedial obligations the County assumed under a standing federal court order, and for the notice that order gave the Riverside County Defendants.** The systemic failures *Gray* did address, including the failure to provide timely care and the absence of adequate policies for specialty consultations and procedures, are the same failures Plaintiff experienced in the dental context. The Riverside County Defendants were on actual notice throughout the operative period that the County's jail health care system suffered from deficiencies of precisely this character and that the County was under federal court order to correct them. They did not extend those corrections to dental care.

## VI. CAUSES OF ACTION

### ***FIRST CAUSE OF ACTION***
**Deliberate Indifference to Serious Dental Needs**
**(42 U.S.C. § 1983 — Eighth and Fourteenth Amendments)**
***(Against Defendants Bianco, Sharp, Lopez, Tochtrop, Minahan, Loh, John Doe #1, Copado, and Does 2-10)***

121. Plaintiff incorporates the preceding paragraphs by reference.

122. A failed dental restoration with exposed dentin, causing chronic and severe pain, infection, and the progressive and irreversible loss of tooth structure, is an objectively serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hunt v. Dental Department*,

865 F.2d 198, 200 (9th Cir. 1989); *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

123. During the periods in which Plaintiff was a convicted prisoner, the Eighth Amendment prohibited these Defendants from acting with deliberate indifference to that need. Each Defendant was aware of facts from which the inference of a substantial risk of serious harm could be drawn, and each drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

124. During the periods in which Plaintiff was a pretrial detainee, the Due Process Clause of the Fourteenth Amendment protected him from punishment and imposed an objective standard: whether these Defendants' conduct was objectively unreasonable in light of the risk of harm that was or should have been apparent. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Plaintiff's rights as a pretrial detainee were at least as broad as, and in this respect broader than, his rights as a convicted prisoner.

125. These Defendants were deliberately indifferent, and their conduct was objectively unreasonable, in that they: denied Plaintiff crown and root canal therapy that their own dentists had determined was medically necessary; delayed all restorative treatment from the 2024 examinations through May 8, 2025, and thereby permitted both teeth to deteriorate irreversibly; probed and thereby destroyed the remaining restorations without providing any replacement; conditioned access to the necessary care upon a payment of approximately $10,000 that Plaintiff could not make and that the County was not entitled to demand; and withheld the dental records without which Plaintiff could not obtain the care elsewhere.

126. The delay caused substantial harm. Both teeth passed from a restorable condition to a non-restorable one and were extracted.

127. **A blanket policy that categorically denies a medically necessary procedure without individualized clinical assessment, and that is applied even over the contrary judgment of the institution's own treating providers, constitutes deliberate indifference.** *Colwell v. Bannister*, 763 F.3d 1060, 1063, 1068-69 (9th Cir. 2014). Cost savings is not a

legitimate penological justification for denying constitutionally required medical care.

128. Conditioning access to medically necessary care upon payment of a fee the detainee cannot pay is not a permissible condition of confinement and serves no legitimate governmental objective, particularly where, as here, California Penal Code § 4011.2 prohibited any fee for an inmate-initiated medical visit throughout the operative period, § 4011(a) places the expense of the necessary security escort on the County, and § 4011(c) places the cost of care for an indigent prisoner on the County general fund.

129. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged herein.

## ***SECOND CAUSE OF ACTION***

**Denial of Access to the Courts**

**(42 U.S.C. § 1983 — First and Fourteenth Amendments; California Constitution, Article I, § 11)**

***(Against Defendants County of Riverside, Bianco, Sharp, Lopez, Tran, Headlee, Janzen, and Does 2-10)***

130. Plaintiff incorporates the preceding paragraphs by reference.

131. The First Amendment guarantees the right to petition for redress of grievances, and the Due Process Clause of the Fourteenth Amendment guarantees meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977); *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996).

132. To state a backward-looking claim, Plaintiff must allege official acts that frustrated his litigation, the loss of a nonfrivolous underlying claim, and a remedy that is no longer available in any other suit. *Christopher v. Harbury*, 536 U.S. 403, 413-16 (2002).

133. **This Cause of Action is predicated solely upon administrative and operational conduct undertaken outside the judicial phase of any case: (a) the transfer of Plaintiff out of County custody on May 8, 2025, and (b) the refusal of the County's records custodians to produce Plaintiff's own dental records and radiographs in response to his direct administrative requests. It is not predicated on the content of any statement made by any Defendant in or in connection with any judicial proceeding.**

134. The transfer of a person between custodial facilities is an operational custody decision, not advocacy. The refusal of a records custodian to honor a patient's own administrative request for his own records is an administrative act, not advocacy.

135. Plaintiff's dental habeas corpus proceeding, Riverside County Superior Court Case No. CVRI-2501564, was a nonfrivolous proceeding that sought an order compelling crown and root canal therapy for teeth numbers 18 and 30. That relief was available and meaningful when the petition was filed, because both teeth were then restorable and both had been found suitable for restoration by the County's own Chief of Dentistry.

136. The transfer caused that proceeding to be dismissed as moot without any evidentiary hearing and without resolution on the merits. The withholding of the records independently prevented Plaintiff from arranging outside treatment during the same interval. By the time Plaintiff was evaluated within CDCR, both teeth had deteriorated beyond restoration.

137. **The remedy Plaintiff lost cannot be obtained in this action.** What the state habeas proceeding could have ordered was treatment that would have preserved Plaintiff's natural teeth. Those teeth are gone. No award of damages here can restore them, and the relief sought in this action is therefore not the relief the state court could have granted. *Christopher v. Harbury*, 536 U.S. at 415.

138. Article I, § 11 of the California Constitution provides that habeas corpus "may not be suspended unless required by public safety in cases of rebellion or invasion." The writ is codified at Penal Code §§ 1473 through 1508 and is available to a person in custody to challenge the conditions of that custody, including the denial of adequate medical and dental care. The guarantee is rendered meaningless if the custodian against whom the writ is directed may defeat the proceeding by removing the petitioner from the jurisdiction of the court hearing it, for reasons having nothing to do with rebellion, invasion, or public safety.

139. To the extent no independent damages remedy lies directly under Article I, § 11, Plaintiff pleads that violation as a predicate deprivation supporting his claim under the Tom Bane Civil Rights Act, below. *Katzberg v. Regents of University of California* (2002) 29 Cal.4th

300; *Degrassi v. Cook* (2002) 29 Cal.4th 333.

## ***THIRD CAUSE OF ACTION***
**Retaliation for Protected Activity**
**(42 U.S.C. § 1983 — First Amendment; California Constitution, Article I, §§ 2 and 3)**
***(Against Defendants Bianco, Sharp, Lopez, Tran, Headlee, Janzen, and Does 2-10)***

140. Plaintiff incorporates the preceding paragraphs by reference.

141. A prisoner states a First Amendment retaliation claim by alleging that a state actor took adverse action against him because of protected conduct, that the action chilled the exercise of his First Amendment rights, and that it did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

142. Plaintiff engaged in protected activity by filing administrative grievances concerning his dental care and by filing and prosecuting habeas corpus petitions in the Riverside County Superior Court.

143. These Defendants took the following adverse actions because of that protected activity: they transferred Plaintiff out of Riverside County on May 8, 2025, one day after the Superior Court ordered RCSD to respond to his dental habeas petition, and while proceedings requiring his presence remained pending in four separate matters; they withheld his own dental records and radiographs in response to his direct administrative requests; and they continued to withhold the restorative dental care their own dentists had found medically necessary.

144. **Each of these adverse actions is conduct, not speech, and none consists of any statement made to any court.** The temporal proximity between the Superior Court's order and the transfer, and between Plaintiff's grievances and the withholding of his records, supports the inference that the protected activity was a substantial or motivating factor in each action.

145. These actions would chill a person of ordinary firmness from continuing to file grievances or to seek judicial relief, and they served no legitimate penological purpose.

146. Article I, § 2 of the California Constitution guarantees that “[e]very person

may freely speak, write and publish his or her sentiments on all subjects," and § 3 guarantees the right "to petition government for redress of grievances." These provisions protect the right of an incarcerated person to file administrative grievances and to seek judicial relief free from retaliation. To the extent no independent damages remedy lies directly under those provisions, Plaintiff pleads the violation as a predicate deprivation supporting his Bane Act claim below. *Katzberg*, 29 Cal.4th 300; *Degrassi*, 29 Cal.4th 333.

***FOURTH CAUSE OF ACTION***
**Conspiracy to Violate Civil Rights**
**(42 U.S.C. § 1983)**
***(Against Defendants Bianco, Sharp, Lopez, Tochtrop, Copado, Tran, Headlee, Janzen, and Does 2-10)***

147. Plaintiff incorporates the preceding paragraphs by reference.

148. A conspiracy claim under 42 U.S.C. § 1983 requires an agreement or meeting of the minds between two or more persons to deprive a plaintiff of a constitutional right, and an actual deprivation resulting from an act done in furtherance of the agreement. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).

149. These Defendants reached an agreement to deprive Plaintiff of his rights to adequate dental care, to access the courts, and to be free from retaliation, by coordinating the denial of care with interference in his legal proceedings.

150. The overt acts taken in furtherance of that agreement included the demand for approximately $10,000 as the price of access to necessary care, the refusal of Plaintiff's administrative requests for his own records, and the transfer of Plaintiff out of the County within twenty-four hours of the Superior Court's order, while proceedings requiring his presence remained pending in four separate matters.

151. The coordinated timing of those acts, and the fact that County Counsel was present when the affected hearings were calendared and was served with the minute orders, supports the inference of agreement. These Defendants acted for reasons personal and institutional to themselves and outside any legitimate scope of their employment, including the

avoidance of judicial scrutiny of the County's dental policy.

152. Plaintiff was actually deprived of the rights alleged in the First through Third Causes of Action as a result.

## ***FIFTH CAUSE OF ACTION***
**Municipal Liability**
**(42 U.S.C. § 1983 — *Monell*)**
***(Against Defendants County of Riverside, Riverside County Sheriff's Department, Riverside County Health Department, and Riverside University Health System)***

153. Plaintiff incorporates the preceding paragraphs by reference.

154. A municipality is liable under 42 U.S.C. § 1983 where an official policy, longstanding custom, or practice is the moving force behind a constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).

155. The County maintained the following official policies and customs: a blanket policy denying crowns and root canal therapy within its facilities regardless of medical necessity; a practice of conditioning access to outside restorative care upon payment of approximately $10,000 in transportation and security charges; a practice of withholding detainees' own medical and dental records; and a failure to maintain the written policies and procedures required by California Code of Regulations, title 15, §§ 1206, 1208, and 1215.

156. Each of those policies and customs was the moving force behind the violations of Plaintiff's rights alleged in the First through Fourth Causes of Action.

157. The County is separately liable for its failure to train and supervise its dental, health administration, and custody personnel in these areas. The need for such training was obvious, and the failure to provide it reflects deliberate indifference to the rights of the persons with whom those employees come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989).

158. The County's undertakings in the *Gray* Consent Decree, its admission therein of probable cause to believe that violations of the plaintiff class's federal rights had occurred, and the continued federal monitoring of seven material components of the Remedial Plan throughout

the operative period, establish that the County had actual notice of systemic deficiencies in the delivery of health care in its jails and failed to extend the required corrections to dental care.

## ***SIXTH CAUSE OF ACTION***

**Supervisory Liability**

**(42 U.S.C. § 1983)**

***(Against Defendants Bianco, Sharp, Lopez, Minahan, Loh, Copado, Tochtrop, Tran, Jeffries, Spiegel, Washington, Perez, and Gutierrez)***

159. Plaintiff incorporates the preceding paragraphs by reference.

160. A supervisor is liable under § 1983 for his own culpable action or inaction in the training, supervision, or control of subordinates; for acquiescence in the constitutional deprivation; or for conduct showing a reckless or callous indifference to the rights of others. Knowledge of and acquiescence in a subordinate's unconstitutional conduct is sufficient. *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

161. Defendant BIANCO, as the final policymaker for jail operations, promulgated and maintained the policy denying crowns and root canal therapy and the practice of demanding transportation and security charges, and did so with knowledge of the County's obligations under state regulation and under the *Gray* Consent Decree.

162. Defendants SHARP and LOPEZ exercised direct supervisory authority over custody and jail health care operations, knew of the policy and of its application to detainees requiring restorative dental care, and acquiesced in it.

163. Defendant MINAHAN held ultimate clinical authority over dental care in the County jails, reviewed Plaintiff's medical records in their entirety, thereby acquired actual knowledge of the findings of medical necessity made by his own subordinates, and took no action to provide or authorize the treatment.

164. Defendant LOH established and enforced the dental treatment guidelines under which the procedures he had himself found necessary were denied, and supervised the staff dentists who applied them.

165. Defendant COPADO, as the Senior Institutional Nurse having charge of

nursing services at the facility where Plaintiff was housed, supervised the nursing staff who received and processed Plaintiff's health care requests and grievances concerning his dental condition. He had actual knowledge of that condition, of the findings of medical necessity made by the County's dentists, and of the fact that no treatment was being provided. He neither acted himself nor directed any nurse under his charge to summon care, and he thereby acquiesced in the deprivation. **Plaintiff alleges supervisory liability against Defendant COPADO only as to the nursing staff and nursing services within his charge, and not as to any County policymaking function.**

166. Defendant TOCHTROP held sole discretion over the approval of transport for outside dental care, received Plaintiff's request, and never acted on it.

167. Defendant TRAN supervised the Deputy County Counsel Defendants and the County's response to Plaintiff's records requests, and failed to take reasonable steps to ensure that the County's custodial and records practices complied with state and federal law.

168. **Defendants JEFFRIES, SPIEGEL, WASHINGTON, PEREZ, and GUTIERREZ are sued in their administrative capacity as the officials holding ultimate oversight authority over the Sheriff's Department and the County's health agencies, and not for any legislative act.** Each received actual notice of the systemic deficiencies in jail health care through the monitoring reports and compliance filings submitted to the Board under the *Gray* Consent Decree, and through Riverside County Civil Grand Jury findings and recommendations concerning health care in the County jails. Having received that notice, each failed to exercise his or her administrative authority to direct the Sheriff's Department or the County's health agencies to adopt or revise the written policies required by California Code of Regulations, title 15, §§ 1206, 1208, and 1215, or to bring the County's dental care and transport practices into compliance with Penal Code § 4011. Each Board member Defendant is liable only for the period of his or her own tenure as alleged above.

169. Each supervisory Defendant's action or inaction was a proximate cause of the violations of Plaintiff's rights alleged herein.

***SEVENTH CAUSE OF ACTION***

**Denial of Equal Protection**

**(42 U.S.C. § 1983 — Fourteenth Amendment; California Constitution, Article I, § 7)**

***(Against Defendants County of Riverside, Riverside County Sheriff's Department, Bianco, Minahan, and Loh)***

170. Plaintiff incorporates the preceding paragraphs by reference.

171. The Equal Protection Clause requires that similarly situated persons be treated alike.

172. **Plaintiff was, for substantial portions of the operative period, a pretrial detainee.** A pretrial detainee has not been convicted of anything and may not be subjected to punishment of any kind. His right to adequate medical care is therefore **at least as extensive as, and in its governing standard more protective than**, the right of a convicted prisoner, whose claim is measured by the Eighth Amendment's subjective deliberate indifference standard. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

173. The County nonetheless afforded Plaintiff, as a pretrial detainee, a categorically lower standard of restorative dental care than California affords to convicted prisoners in CDCR custody, for whom restorative and endodontic treatment is available according to clinical need under an established priority classification system, and a lower standard than California affords to indigent members of the general public, for whom laboratory processed crowns and posterior root canal therapy have been covered Medi-Cal benefits since January 1, 2018. **Plaintiff pleads those comparisons principally as evidence bearing on the objective reasonableness of the County's conduct and on Defendants' deliberate indifference**: a categorical refusal to provide care that the State's own correctional health system makes available on clinical indication, and that the County's own dentists found medically necessary, is objectively unreasonable and is not explicable by any legitimate governmental objective.

174. The County further drew a distinction among detainees on the basis of ability

to pay. A detainee able to produce approximately $10,000 could obtain the restorative care the County refused to provide. An indigent detainee could not. That distinction was not rationally related to any legitimate governmental objective, because California Penal Code § 4011.2 prohibited any fee for an inmate-initiated medical visit, and § 4011(a) places the escort expense on the County, and § 4011(c) places the cost of care for an indigent prisoner on the County general fund.

175. Article I, § 7 of the California Constitution provides that a person may not be denied equal protection of the laws. To the extent no independent damages remedy lies directly under that provision, Plaintiff pleads the violation as a predicate deprivation supporting his Bane Act claim below. *Katzberg*, 29 Cal.4th 300; *Degrassi*, 29 Cal.4th 333.

## ***EIGHTH CAUSE OF ACTION***
**Violation of the Tom Bane Civil Rights Act**
**(California Civil Code § 52.1)**
***(Against All Riverside County Defendants)***

176. Plaintiff incorporates the preceding paragraphs by reference.

177. Civil Code § 52.1 provides a civil action against any person who interferes, or attempts to interfere, by threat, intimidation, or coercion with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or of California.

178. The Act reaches the federal rights alleged in the First through Seventh Causes of Action and the rights secured by Article I, §§ 2, 3, 7, and 11 of the California Constitution. It also reaches the right, secured by Article I, § 17, to be free from cruel or unusual punishment; **deliberate indifference to the serious medical and dental needs of an incarcerated person constitutes cruel or unusual punishment within the meaning of that provision**. The Bane Act supplies the damages remedy that is otherwise unavailable for direct violations of these state constitutional provisions. *Katzberg*, 29 Cal.4th 300; *Degrassi*, 29 Cal.4th 333.

179. **This Cause of Action is not predicated upon the content of any statement made by any Defendant in or in connection with any judicial proceeding.** It rests on

administrative and operational conduct undertaken outside the judicial phase of any case, and therefore does not rest upon speech alone within the meaning of Civil Code § 52.1(k).

180. These Defendants interfered and attempted to interfere with Plaintiff's rights by threat, intimidation, and coercion, consisting of: **demanding payment of approximately $10,000 in transportation and security charges as the price of access to restorative dental care they were obligated to provide, that Penal Code § 4011.2 forbade them to charge, and that Penal Code § 4011 required the County itself to fund**; presenting Plaintiff with a choice between the extraction of teeth that could be preserved and the continuation of untreated pain and infection; withholding Plaintiff's own dental records and radiographs in response to his direct administrative requests, thereby preventing him from obtaining an outside opinion or arranging outside care; and transferring Plaintiff out of Riverside County on May 8, 2025, within twenty-four hours of a court order directed to RCSD, while proceedings requiring his presence remained pending in four separate matters.

181. Each of those acts is conduct rather than speech. A demand for money, the denial of care, the refusal of a records request, and the physical transfer of a person between custodial facilities are administrative and operational acts.

182. **The coercion alleged is separate from and additional to the underlying denial of care.** It consisted of the economic demand described above and the removal of Plaintiff from the jurisdiction in which he was litigating. These Defendants acted with the specific intent to deprive Plaintiff of his rights to adequate medical and dental care, to access the courts, and to be free from retaliation. *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766, 801-04.

183. Plaintiff is entitled to compensatory damages, to the damages available under Civil Code § 52, to punitive damages against the individual Defendants, and to reasonable attorney's fees and costs.

184. Civil Code § 52.1(n) provides that the immunity provisions of Government Code §§ 821.6, 844.6, and 845.6 do not apply to a cause of action brought under § 52.1 against a

peace officer or custodial officer, as those terms are defined in Penal Code § 830 et seq., or directly against a public entity that employs such an officer. Defendants BIANCO, SHARP, LOPEZ, and TOCHTROP are peace officers within the meaning of those provisions, and Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT employ peace officers and custodial officers.

## ***NINTH CAUSE OF ACTION***

**Professional Negligence and Negligence Per Se**

**(California Government Code §§ 815.2, 820, 845.6; Evidence Code § 669)**

***(Against All Riverside County Defendants)***

185. Plaintiff incorporates the preceding paragraphs by reference.

186. Defendants LOH, JOHN DOE #1, MINAHAN, COPADO, and DOES 2 through 10, as licensed health care providers, owed Plaintiff a duty to exercise the level of skill, knowledge, and care ordinarily possessed and exercised by dental and medical practitioners under similar circumstances, including the duty to present all viable treatment options and to provide necessary restorative treatment in a timely manner. **That standard does not vary with the custodial status of the patient. A dentist who treats a person confined in a county jail owes that patient the same professional standard of care he would owe any other patient.**

187. Defendants LOH and JOHN DOE #1 breached that duty by finding treatment medically necessary and then failing to provide it; by failing to provide timely treatment for the failed restorations; by probing and thereby destroying the remaining restorations without providing any replacement; by directing Plaintiff toward extraction of teeth that could have been preserved; **by determining that a procedure was medically necessary, being unable or unwilling to perform it within the facility, and then failing to refer Plaintiff to a practitioner who could**; and by allowing Plaintiff's condition to deteriorate to the point of non-restorability.

188. Defendant MINAHAN breached that duty by acquiring actual knowledge of Plaintiff's serious dental need and of his subordinates' findings of medical necessity, and failing

to authorize or arrange the treatment.

189. Defendant COPADO breached that duty by observing and being informed of Plaintiff's dental condition, including exposed dentin and severe unremitting pain; by knowing that two County dentists had found restorative treatment medically necessary and that it had not been provided; and by failing to refer Plaintiff to an appropriate health care provider, to escalate his condition to a physician, or to take any other action within the scope of his nursing license and his charge over nursing services to obtain the treatment. **The Nurse Practice Act, Business and Professions Code § 2700 et seq., and the professional standards governing registered nursing, supply the standard of care applicable to Defendant COPADO; Plaintiff pleads them as evidence of that standard and not as an independent cause of action.**

190. The remaining Riverside County Defendants owed Plaintiff a duty of reasonable care in the operation of the County's jail health care system and in the custody and production of his health records, and breached that duty as alleged herein.

191. California Government Code § 845.6 provides that a public employee, and the public entity employing him, are liable where the employee knows or has reason to know that a prisoner is in need of immediate medical care and fails to take reasonable action to summon such care. Defendants LOH, JOHN DOE #1, MINAHAN, and COPADO are each lawfully engaged in the practice of one of the healing arts. **After the restorations in teeth numbers 18 and 30 fell out entirely, leaving the dentin of both teeth exposed, Plaintiff was in severe and unremitting pain and both teeth were open to bacterial invasion and infection.** That was a serious and obvious condition requiring immediate care. Defendants COPADO, TOCHTROP, and DOES 2 through 10 knew or had reason to know of that condition through Plaintiff's grievances, his requests for care, and his request for outside treatment, and took no reasonable action to summon any care for it.

192. **Section 845.6 further provides that nothing in it "exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the**

**public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6.”** The professional negligence of Defendants LOH, JOHN DOE #1, MINAHAN, and COPADO alleged in this Cause of Action is therefore actionable against each of them personally notwithstanding § 845.6, and the County and RUHS remain obligated to pay any resulting judgment under Government Code § 844.6(d).

193. California Code of Regulations, title 15, §§ 1206, 1208, and 1215, adopted under the authority of Penal Code § 6030, and California Penal Code §§ 4011, 4011.2, and 4011.3, establish the standard of care governing dental services and outside medical transport in California local detention facilities. These Defendants violated each of those provisions. Plaintiff is a member of the class of persons those provisions were designed to protect, and the injuries he suffered are of the nature the provisions were designed to prevent. Those violations give rise to a presumption of negligence under California Evidence Code § 669 and further evidence these Defendants' breach of the standard of care.

194. Under California Government Code § 815.2(a), “[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment.” Each individual Defendant acted within the scope of his or her employment, and Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, RIVERSIDE COUNTY HEALTH DEPARTMENT, and RIVERSIDE UNIVERSITY HEALTH SYSTEM are therefore liable for the injuries proximately caused by those acts and omissions.

195. These breaches were a substantial factor in causing Plaintiff's injuries and damages.

## ***TENTH CAUSE OF ACTION***

**Medical Battery, or in the Alternative, Negligent Failure to Obtain Informed Consent**

**(California Common Law; *Cobbs v. Grant*, 8 Cal.3d 229 (1972))**

***(Against Defendants Loh and John Doe #1)***

196. Plaintiff incorporates the preceding paragraphs by reference.

197. **Plaintiff consented to a visual and diagnostic dental examination.** He presented for that examination for the express purpose of having his failed restorations repaired and his teeth preserved.

198. **Plaintiff did not consent to the probing.** He did not consent to any procedure in which a metal instrument would be used to pick at and dig into the cracked restorations in teeth numbers 18 and 30, and he did not consent to any procedure carrying a risk of weakening or dislodging the very restorations he had presented to have repaired.

199. Each of Defendants LOH and JOHN DOE #1 nonetheless used a metal dental probe to pick at and dig into those restorations. In doing so, each performed a procedure substantially different from the one to which Plaintiff had consented, and beyond the scope of that consent, and each thereby committed a medical battery upon Plaintiff. *Cobbs v. Grant*, 8 Cal.3d 229, 239-40 (1972).

200. **In the alternative**, and only to the extent the probing is found to have fallen within the scope of the examination to which Plaintiff consented, Plaintiff alleges that each of Defendants LOH and JOHN DOE #1 was negligent in failing to obtain Plaintiff's informed consent. Neither advised Plaintiff, before probing, that manipulating a cracked restoration with a metal instrument could weaken or dislodge it. That risk was material. A reasonable person in Plaintiff's position, having presented specifically in order to preserve those restorations until crowns could be placed, would have declined had the risk been disclosed, and Plaintiff would have declined. *Cobbs v. Grant*, 8 Cal.3d at 240-45.

201. The probing further weakened both restorations, which thereafter fell out completely and exposed the dentin within teeth numbers 18 and 30. That exposure caused Plaintiff severe and unremitting pain, accelerated the deterioration of both teeth, and converted the denied crown and root canal procedures from indicated to urgent. **These harms flowed directly from the unconsented and undisclosed touching and are compensable independently of the extraction that followed.**

***ELEVENTH CAUSE OF ACTION***

**Intentional Infliction of Emotional Distress, or in the Alternative,**
**Negligent Infliction of Emotional Distress**
**(California Common Law)**
***(Against All Individual Riverside County Defendants)***

202. Plaintiff incorporates the preceding paragraphs by reference.

203. These Defendants' conduct was extreme and outrageous and exceeded all bounds tolerated in a civilized community. It included refusing restorative care their own dentists had found medically necessary; demanding approximately $10,000 as the price of access to that care from a person they knew to be indigent, when the County was itself obligated to bear that expense; leaving Plaintiff for months in constant pain with exposed dentin in two teeth; withholding his own dental records; and removing him from the jurisdiction one day after a court ordered them to answer his petition. *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.

204. These Defendants intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability that their conduct would do so, knowing that Plaintiff was in their custody, in pain, and wholly dependent upon them for care.

205. Plaintiff suffered severe emotional distress, including anxiety, depression, and psychological harm arising from chronic pain, the fear of losing his teeth, and the loss of his ability to obtain judicial relief.

206. **In the alternative**, and only to the extent this conduct is found not to rise to the level of extreme and outrageous conduct, Plaintiff alleges that these Defendants negligently inflicted emotional distress upon him. Plaintiff was a direct victim of their negligent conduct, they owed him a duty of care arising from the custodial and provider relationships alleged herein, and severe emotional distress was a reasonably foreseeable result of the breach of that duty. *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1073-74; *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984-85.

***<u>TWELFTH CAUSE OF ACTION</u>***

**Fraudulent Misrepresentation**

**(California Civil Code §§ 1709-1710)**

***(Against Defendants Loh and John Doe #1)***

207. Plaintiff incorporates the preceding paragraphs by reference.

208. **This Cause of Action is predicated solely upon representations made directly to Plaintiff in the course of his dental care within County facilities. Plaintiff does not plead, and does not seek to impose liability for, any statement made by any Defendant in or in connection with any judicial proceeding, and nothing in this Cause of Action is pleaded against Defendants TRAN, HEADLEE, or JANZEN.**

209. In 2024, at the County facility where Plaintiff was housed, Defendants LOH and JOHN DOE #1 each represented directly to Plaintiff that crown and root canal therapy were unavailable to him within County facilities as a matter of policy; that extraction was the only treatment the County would provide for teeth numbers 18 and 30; and that the only way he could obtain the restorative care they had themselves found medically necessary was to arrange and fund private treatment outside the facility and to pay the County approximately $10,000 per trip in transportation and security charges.

210. Those representations were false when made. Each of these Defendants had personally determined that teeth numbers 18 and 30 were suitable for restoration and that crown placement was medically necessary. California Code of Regulations, title 15, § 1215 required the facility to maintain policies ensuring that medically required dental care was provided to Plaintiff upon request, and § 1206 required written policies addressing non-emergency dental services including transportation. California Penal Code § 4011 placed the expense of the security escort on the County and, Plaintiff being indigent, placed the cost of the care itself on the County general fund, and Penal Code § 4011.2 prohibited the charging of any fee for an inmate-initiated medical visit. Crown placement and root canal therapy are, moreover, covered medically necessary benefits under California's own Medi-Cal program for adults with full-scope coverage. The care was therefore neither elective nor lawfully deniable, and its provision was not

contingent upon Plaintiff's ability to pay.

211. These Defendants knew the representations were false when made, or made them with reckless disregard for their truth, and made them with the intent that Plaintiff rely upon them and abandon his requests for in-facility restorative care.

212. Plaintiff justifiably relied. In reliance, he ceased pursuing in-facility restorative treatment, submitted a request for outside care and transport, and expended time and resources attempting to arrange and fund private treatment the County was obligated to provide.

213. As a direct and proximate result of that reliance, teeth numbers 18 and 30 went untreated throughout the interval in which they remained restorable, deteriorated beyond restoration, and were extracted. Plaintiff's damages include the permanent loss of two natural teeth, the cost of the implants required to replace them, and the associated follow-up, transportation, and security costs.

## ***THIRTEENTH CAUSE OF ACTION***
**Denial of Access to Health Records**
**(California Health and Safety Code §§ 123110, 123120)**
***(Against Defendants County of Riverside, Riverside County Sheriff's Department, Riverside University Health System, Bianco, Minahan, Loh, Copado, Tran, Headlee, and Does 2-10)***

214. Plaintiff incorporates the preceding paragraphs by reference.

215. California Health and Safety Code § 123110(a) entitles a patient, upon presenting a request to the health care provider, to inspect his patient records during business hours within five working days after receipt of the request, and subdivision (b) entitles the patient, upon written request and payment of reasonable clerical costs, to copies within fifteen days.

216. Plaintiff presented written requests to these Defendants, as the providers and custodians of his dental records, for copies of his own dental records and radiographs. Defendant COPADO's duties included supervising the preparation and maintenance of complete medical records and reports at the facility. These Defendants failed and refused to produce them, both in response to those direct requests and in response to a subpoena served in his state habeas corpus

proceedings.

217. California Health and Safety Code § 123120 provides that a patient aggrieved by a violation of § 123110 may bring an action against the health care provider **to enforce the obligations prescribed by § 123110**, and that any judgment rendered may, in the discretion of the court, include an award of costs and reasonable attorney fees to the prevailing party. Plaintiff brings this Cause of Action to enforce those obligations and seeks his costs and reasonable attorney fees.

218. The failure to produce Plaintiff's dental records upon authorized written request, and the failure to comply with a court order issued in the enforcement of a subpoena for those records, also constitute unprofessional conduct sanctionable by civil penalty under California Business and Professions Code § 1684.1. **Plaintiff pleads § 1684.1 as evidence of the governing professional standard of care and not as an independent cause of action.**

219. The withholding of Plaintiff's records prevented him from obtaining an outside dental opinion, from arranging outside restorative treatment while teeth numbers 18 and 30 remained restorable, and from substantiating his administrative grievances and his habeas corpus petitions.

## VII. DAMAGES

220. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer the damages set out below.

### *A. Economic Damages*

221. Past and future dental treatment costs, including dental implants to replace extracted teeth numbers 18 and 30 at a cost of approximately $10,000 per tooth; associated follow-up care; the transportation and security charges required to obtain that care from outside providers; ongoing dental care necessitated by Defendants' delay; and treatment for complications arising from the untreated conditions that led to the extractions.

222. Costs incurred in pursuing administrative and legal remedies, including filing fees, copying and mailing costs, and legal research expenses.

***B. Non-Economic Damages***

223. Severe physical pain and suffering from exposed dentin, chronic infection, and untreated dental disease, which interfered with Plaintiff's ability to eat, sleep, and function normally.

224. Mental anguish and emotional distress, including anxiety over the loss of his teeth, depression arising from chronic unrelenting pain, humiliation, loss of dignity, and fear of infection and systemic complications.

225. Permanent loss of two natural teeth, permanent impairment of the ability to masticate, and loss of enjoyment of life.

***C. Punitive Damages***

226. The conduct of the individual Riverside County Defendants was malicious, oppressive, and in conscious disregard of Plaintiff's rights. **Plaintiff seeks punitive damages against the individual Defendants only, in their individual capacities, and seeks no punitive damages against any public entity.**

227. The individual Defendants were on notice throughout the operative period that health care in the Riverside County jails was subject to a standing federal court order requiring remediation, that the County had admitted in that proceeding the existence of probable cause to believe that violations of prisoners' federal rights had occurred, and that seven of the twenty material components of the Remedial Plan remained subject to active federal monitoring. With that knowledge, they denied Plaintiff the restorative treatment their own dental professionals had found medically necessary, conditioned it upon a payment Plaintiff could not make and the County was obligated to bear, and withheld it until both teeth were lost. That conduct was undertaken with reckless and callous indifference to Plaintiff's federally protected rights and warrants an award of punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

1. General and special compensatory damages in an amount to be proven at trial;

2. All damages, including statutory damages, available under the state law causes of action pleaded herein;

3. Punitive damages against the individual Defendants in their individual capacities;

4. Reasonable attorney's fees, in the event Plaintiff obtains counsel in this action, under any applicable fee-shifting provision;

5. Costs of suit;

6. Pre-judgment and post-judgment interest at the maximum lawful rate;

7. Leave to amend as warranted by discovery, including leave to substitute the true names of the Doe Defendants once ascertained; and

8. Such other and further relief as the Court deems just and proper.

Plaintiff's previously pleaded requests for declaratory and injunctive relief are omitted from this First Amended Complaint solely in compliance with the Court's Order of July 31, 2026 (Dkt. No. 17), and not by voluntary abandonment or waiver of those requests or of any objection to the ruling striking them. See *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## IX. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: August 20, 2026

By: Daniel Garcia

DANIEL CARLOS GARCIA

*Plaintiff pro se*

# EXHIBITS

**Exhibit A** — Order to Show Cause issued by the California Supreme Court in Case No. S274616 on October 26, 2022, made returnable to the Riverside County Superior Court as Case No. CVPS-2204495.

**Exhibit B** — Government Claims Act claim presented by Daniel Carlos Garcia to the Riverside County Board of Supervisors on March 24, 2025.

**Exhibit C** — Notice of rejection of that claim issued by the County of Riverside on April 21, 2025.

**EXHIBIT A**

Order to Show Cause Issued by the California Supreme Court

in Case No. S274616 on October 26, 2022,

Made Returnable to the Riverside County Superior Court

as Case No. CVPS-2204495

EXHIBIT A

# Supreme Court of California

JORGE E. NAVARRETE
CLERK AND EXECUTIVE OFFICER
OF THE SUPREME COURT

EARL WARREN BUILDING
350 McALLISTER STREET
SAN FRANCISCO, CA 94102
(415) 865-7000

October 26, 2022

Honorable Anthony R. Villalobos
Superior Court of Riverside County
46 200 Oasis Street, Department 2H
Indio, California 92201

**Re: S274616 – In Re Daniel Carlos Garcia on Habeas Corpus**

Dear Judge Villalobos:

The court on October 26, 2022 issued an order to show cause in the above matter returnable before your court. Accordingly, we enclose herewith the original of the petition for writ of habeas corpus, with attached exhibits filed herein by Daniel Carlos Garcia petitioner in pro per, and a certified copy of the order to show cause.

We have sent a certified copy of the order to Kathleen Allison, Secretary of the Department of Corrections and Rehabilitation.

As you know, the court's issuance of the order to show cause, returnable before your court, requires the appointment of counsel, a hearing, and the disposition of the petitioner's claims on their merits. (See *In re Hochberg* (1970) 2 Cal.3d 870, 875-876, fn. 4; *People* v. *Barton* (1978) 21 Cal.3d 513, 519, fn. 3.)

Very truly yours,

JORGE E. NAVARRETE
Clerk and
Executive Officer of the Supreme

By: Celia Wong, Deputy Clerk

Enclosures

cc: Kathleen Allison, Secretary of the Department of Corrections and Rehabilitation
✓Emily C. Headlee, Office of the County Counsel
Daniel Carlos Garcia, Petitioner
Office of the Attorney General
Rec.

EXHIBIT A

SUPREME COURT
FILED
OCT 26 2022
Jorge Navarrete Clerk
Deputy

S274616

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re DANIEL CARLOS GARCIA on Habeas Corpus.

---

The Sheriff of Riverside County is ordered to show cause, returnable before the Riverside County Superior Court, why relief should not be granted on the ground Riverside County Jail officials have demonstrated deliberate indifference to petitioner's medical needs within the meaning of Fourteenth Amendment. The return must be served and filed on or before November 28, 2022.

Cantil-Sakauye
*Chief Justice*

Corrigan
*Associate Justice*

Liu
*Associate Justice*

Kruger
*Associate Justice*

__________
*Associate Justice*

Jenkins
*Associate Justice*

Guerrero
*Associate Justice*

**EXHIBIT B**

Government Claims Act Claim Presented by Daniel Carlos Garcia

to the Riverside County Board of Supervisors

on March 24, 2025

EXHIBIT B

# COUNTY OF RIVERSIDE — CLAIM FOR DAMAGES TO PERSON OR PROPERTY

COUNTY OF RIVERSIDE MAY 9, 1893

**INSTRUCTIONS:**

1. Read claim *thoroughly*.
2. Fill out claim as indicated; attach additional information if necessary.
3. This office needs the *original* completed claim form and clear readable copies of attachments (if any) if originals are not available.
4. This claim form *must* be signed.

**DELIVER OR U.S. MAIL TO:** CLERK OF THE BOARD OF SUPERVISORS
ATTN: CLAIMS DIVISION
P.O. BOX 1147, 4080 LEMON ST, 1ST FL.
RIVERSIDE, CA. 92502-1147 (951) 955-1060

OFFICE USE ONLY

TIME STAMP HERE

1. FULL NAME OF CLAIMANT: Daniel Carlos Garcia

2. MAILING ADDRESS (STREET / PO BOX): 1920 Boston Way

CITY: Modesto STATE: CA ZIP CODE: 95355-8918

HOME TELEPHONE: ( ) (209) 988-8422 BUSINESS TELEPHONE: ( )

3. WHEN DID DAMAGE OR INJURY OCCUR (PLEASE BE EXACT): December 2024

4. WHERE DID DAMAGE OR INJURY OCCUR? John Benoit Detention Center

STREET CITY STATE ZIP CODE: 82675 CA Highway 111, Indio, CA 92201

5. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED:

See attached addendum to claim form. Inadequate dental care that fails to meet constitutionally and professional minimum standards of care; the Sheriff's Dept. won't install crowns or perform root canals and refuses to transport me to an outside provider where I could have dental care provided at my own expense unless I also pay for the cost of transport.

6. WERE POLICE OR PARAMEDICS CALLED? ☐ YES ☑ NO

7. IF PHYSICIAN/HOSPITAL WAS VISITED DUE TO INJURY, INCLUDE DATE OF FIRST VISIT AND HOSPITAL'S NAME, ADDRESS AND PHONE NUMBER:

DATE OF FIRST VISIT: N/A PHYSICIAN'S/HOSPITAL'S NAME: N/A

PHYSICIAN'S/HOSPITAL'S ADDRESS: PHONE: ( )

8. WHY DO YOU CLAIM THE COUNTY IS RESPONSIBLE?

While in the custody of the Riverside County Sheriff's Dept., I have received inadequate dental care; my fillings have fallen out and the Sheriff's Dept. won't install crowns

9. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE). Chief Dentist & Treating Dentist

NAME: names unknown DEPARTMENT: Correctional Health Services

10. WITNESSESS TO DAMAGE OR INJURY: LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION:

NAME PHONE
ADDRESS

NAME PHONE
ADDRESS

NAME PHONE
ADDRESS

11. LIST DAMAGES INCURRED TO DATE (attach copies of receipts or repair estimates)

unknown

TOTAL DAMAGES TO DATE: $ unknown

TOTAL ESTIMATED PROSPECTIVE DAMAGES: $ 5,000 to 30,000

**THIS CLAIM MUST BE SIGNED TO BE VALID.** ***NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72.)***

**WARNING:**

- CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN SIX (6) MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)
- ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE (1) YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)
- SUBJECT TO CERTAIN EXCEPTIONS. YOU HAVE ONLY SIX (6) MONTHS FROM THE DATE OF THE WRITTEN NOTICE OF REJECTION OF YOUR CLAIM TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)
- IF WRITTEN NOTICE OF REJECTION OF YOUR CLAIM IS NOT GIVEN, YOU HAVE TWO (2) YEARS FROM ACCRUAL OF THE CAUSE OF ACTION TO FILE A COURT ACTION. (GOVERNMENT CODE SECTION 945.6)

12. CLAIMANT OR PERSON FILING ON HIS/HER BEHALF: [signature]
SIGNATURE RELATIONSHIP TO CLAIMANT

13. PRINT OR TYPE NAME: Daniel Carlos Garcia DATE: March 22, 2025

COB 06/27/03 BGS REVISED: 7/20/2010

**EXHIBIT B**

**CLAIM AGAINST THE COUNTY OF RIVERSIDE**
**CALIFORNIA GOVERNMENT CODE §§ 910-915.4**
**ATTACHMENT TO CLAIM FORM**

**Date: March 22, 2025**

**CLAIMANT INFORMATION:**

Name: Daniel Carlos Garcia
Address for Notices:
Daniel Carlos Garcia
1920 Boston Way,
Modesto, CA 95355-8918

**CLAIM COMPLIANCE INFORMATION:**

This claim is submitted in compliance with the California Tort Claims Act (Government Code §§ 900 et seq.) and is timely filed within six (6) months of the injury giving rise to the claim. The specific acts or omissions of county employees giving rise to this claim occurred between December 10, 2024 and February 28, 2025, and constitute ongoing violations.

**TO THE COUNTY OF RIVERSIDE AND ITS OFFICERS, EMPLOYEES, AND AGENTS:**

Pursuant to California Government Code §§ 910-915.4, I hereby present this claim for damages against the County of Riverside.

**PUBLIC ENTITY OR EMPLOYEE CAUSING INJURY:**

The following public entities and/or employees caused the injuries complained of:

1. County of Riverside
2. Riverside County Sheriff's Department
3. Riverside County Correctional Health Services - Dental Department
4. Chief of Dentistry, name unknown
5. Treating dentist, name unknown
6. Emily Headlee, Deputy County Counsel
7. Thomas Minahan, DO, Medical Director for Riverside County Correctional Health
8. Chad Bianco, Riverside County Sheriff

**DATE, PLACE, AND CIRCUMSTANCES OF OCCURRENCE:**

Date: Ongoing from December 10, 2024, to present Place: John Benoit Detention Center (JBDC) and Riverside County dental facilities

**EXHIBIT B**

**CIRCUMSTANCES:**

I am currently detained at the John Benoit Detention Center and have been in the custody of the Riverside County Sheriff's Department since January 10, 2020, while awaiting the adjudication of my habeas corpus and criminal proceedings. My Inmate Booking No. is 2020-01501.

During my detention, I received dental care from the Riverside County dental department, including routine restorative and teeth cleaning procedures such as the placement of fillings. On December 10, 2024, during a routine dental examination, it was discovered that two fillings had failed (cracked), requiring additional treatment. I was further advised that three other teeth "would eventually" require crowns as the fillings I received while in custody would likely fail.

On December 23, 2024, the cracked filling in tooth no. 30 completely came out leaving the dentin (internal tooth tissue) and nerve completely exposed. On December 26, 2024, the cracked filling in tooth no. 18 completely came out leaving the dentin (internal tooth tissue) and nerve completely exposed. This has caused significant pain, discomfort, and difficulty chewing food. The complete failure of these two fillings has increased the risk of losing both teeth if they are not immediately repaired with crowns and possibly root canal procedures. It also increases the risk of infection and possible loss of adjacent teeth.

Both the treating dentist and the Chief of Dentistry unequivocally determined that these teeth require the placement of crowns, as the teeth cannot be adequately treated with replacement fillings. They informed me that if I did not receive crowns in a timely manner, the teeth would likely deteriorate further, necessitating root canals in addition to crowns. If treatment is further delayed, both teeth would eventually require extraction.

Despite this clear medical necessity acknowledged by the County's own dental professionals, I was informed that the Riverside County Sheriff's Department dental program does not provide crown procedures or root canals. Instead, I was told that my only options were: (1) wait until release from custody to seek treatment, (2) agree to have the teeth unnecessarily extracted, or (3) attempt to obtain treatment from an outside provider at my own expense.

When I requested to be transported to an outside dental provider at my family's expense, this request was explicitly rejected. Deputy County Counsel Emily Headlee informed the court in my habeas corpus proceedings that the appropriate standard of care was extraction rather than crowns, directly contradicting the medical opinions of the County's own dental professionals.

The County has imposed unreasonable conditions on my ability to seek outside care, including requiring me to personally bear the costs of transportation and security (estimated at thousands of dollars per trip), despite covering such costs when the County's own medical staff schedule outside appointments.

This denial of medically necessary dental care violates my rights under the Fourteenth Amendment to the United States Constitution, California law, and established medical standards. The County's own dental professionals have confirmed that crowns are medically necessary, that the teeth are salvageable, and that extraction would be inappropriate when preservation is possible.

**EXHIBIT B**

## GENERAL DESCRIPTION OF INJURY, DAMAGE, OR LOSS:

As a result of the County's actions and inactions, I have suffered and continue to suffer:

1. Ongoing dental pain and discomfort
2. Progressive deterioration of two teeth that could have been preserved with appropriate treatment
3. Risk of permanent tooth loss requiring more extensive and expensive future treatment
4. Risk of infection and associated complications
5. Impaired ability to chew and maintain proper nutrition
6. Emotional distress related to unnecessary pain and the prospect of permanent tooth loss
7. Violation of my constitutional rights to adequate medical care while in custody

## BASIS OF COMPUTATION:

The current estimated cost for placing crowns on the two affected teeth is $2,500 per tooth, for a total of $5,000. However, due to the County's refusal to provide timely treatment, if the teeth deteriorate to the point of requiring extraction and subsequent dental implants, the estimated future cost could be as high as $8,000 per tooth, plus additional costs for anesthesia, follow-up visits, and other related procedures. This would result in future dental costs of approximately $20,000-$30,000.

Additionally, if litigation becomes necessary to secure proper treatment, I will seek damages for:

1. Physical pain and suffering
2. Emotional distress
3. Violation of constitutional rights
4. Punitive damages
5. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988

Furthermore, if a civil suit becomes necessary, the cost to the County for litigation, discovery, expert witnesses, and potential settlement would likely exceed tens of thousands of dollars. I would also seek class action status on behalf of all inmates denied necessary dental procedures, which could expose the County to substantial damages.

## REQUESTED RELIEF:

1. Immediate transportation to an outside dental provider of my choice in close proximity to the John Benoit Detention Center for evaluation and placement of crowns on the affected teeth, with the County bearing the costs of transportation and security.
2. **At this time, if the County agrees to provide transportation to an outside dental provider of my choice in close proximity to the John Benoit Detention Center, I will not hold the County responsible for the costs of the dental procedures themselves, which will be borne by my family. However, if this claim is rejected, I will hold the County responsible for both transportation and the full cost of all necessary restorative dental procedures, as well as any other damages available by law.**

**EXHIBIT B**

**WARNING:**

Please be advised that failure to resolve this claim will result in the filing of a civil lawsuit against the County of Riverside and its dental staff, not only for civil rights violations under 42 U.S.C. § 1983, but also for all applicable dental malpractice claims under California law. Additionally, a formal complaint will be lodged with the California Attorney General's Office for civil rights violations.

I have already attempted to resolve this matter informally with the Riverside County Sheriff's Department, but these attempts were unsuccessful. Deputy County Counsel Emily Headlee has explicitly rejected any possibility of the Sheriff's Department providing the required restorative dental care or transporting me to an outside provider.

Timely attention to this matter could save the County significant expense and liability.

**REQUEST FOR NOTICE:**

Please provide written notice of any insufficiency of this claim within 20 days of filing, as required by Government Code § 910.8.

**CERTIFICATION:**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 21, 2025, at Indio, California.

Daniel Carlos Garcia, Claimant In Pro Per

Attachment: Draft Civil Rights Complaint

**EXHIBIT C**

Notice of Rejection of Claim Issued by

the County of Riverside

on April 21, 2025

**EXHIBIT C**

OFFICE OF THE
CLERK OF THE BOARD OF SUPERVISORS
1st FLOOR, COUNTY ADMINISTRATIVE CENTER
P.O. BOX 1147, 4080 LEMON STREET
RIVERSIDE, CA 92502-1147
PHONE: (951) 955-1060 FAX: (951) 955-1071

KIMBERLY A. RECTOR
Clerk of the Board of Supervisors

APRIL BOYDD
Assistant Clerk of the Board

April 21, 2025

DANIEL GARCIA
1920 BOSTON WAY
MODESTO, CA 95355-8918

**RE: NOTICE OF REJECTION OF CLAIM**

| | |
|---|---|
| **Claimant(s):** | **GARCIA, Daniel** |
| **Date of Loss:** | **12/2024** |
| **Claim No:** | **189-25** |
| **Date Claim Received:** | **03/24/2025** |

Notice is hereby given that the claim you presented to the Clerk of the Board of Supervisors was rejected by the Board on April 21, 2025.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code section 945.6.

You may seek the advice of any attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

This warning, and the six-month deadline, only apply to the extent a lawsuit would be based on California law, and do not apply to the extent a lawsuit would be based on federal law.

Kimberly A. Rector
Clerk to the Board of Supervisors

By:

Daniel Lopez, Clerk of the Board Assistant

I declare that my business address is 1st Floor, County Administrative Center, 4080 Lemon Street, Riverside California, that I am a citizen of the United States of America, employed by the County of Riverside and am not a party to the action. On the date stated below I mailed the foregoing notice by depositing a copy thereof in the outgoing mail at Riverside, California, in a sealed envelope, with postage prepaid, addressed to the person(s) listed above. I declare under penalty of perjury that the foregoing is true and correct.

Executed at Riverside, California on April 21, 2025.

Daniel Lopez, Clerk of the Board Assistant

RM: 202445446

GL090